IN RE ESTATE OF BENGT SWANSON.
HEIRS OF BENGT SWANSON, APPELLEES, v. MELVIN O. SWANSON ET AL., ADMINISTRATORS, APPELLANTS.

FILED OCTOBER 25, 1935. No. 29342.

R. O. Reddish, for appellants.

Boyd & Metz and A. C. R. Swenson, contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

DAY, J.

The administrators of the estate of Bengt Swanson, deceased, filed their final report and accounts, to which the heirs objected in three particulars, as follows: (1) That the report does not account for $10,000 realized from the sale of wheat produced on real estate of deceased during 1929; (2) that the administrators should not have credit for $11,537.27 paid on principal and interest on account of a mortgage against certain real estate of deceased; and (3) that $559.59 of the balance for which the administrators are accountable is held in the form of a receiver's certificate of a failed bank, which the heirs are not bound to take. The trial court found in favor of the adminis-

trators on No. 1 and against them on Nos. 2 and 3. The administrators appealed upon the second proposition and the heirs cross-appealed as to item No. 1. There is no issue here as to the third item.

The issue as to item No. 1, relating to the failure to account for $10,000 realized from the sale of wheat, is determinable as a question of fact. The wheat in question was grown by one Jelinek upon 900 acres of land sold to him by the deceased under a contract whereby Jelinek was to pay $10,000 on the purchase price in 1929 from the crop. The record reveals that there is no tangible evidence as to the amount of wheat grown on the land or its value. It does appear in the evidence without rebuttal that 4,500 bushels of wheat grown were sold before Swanson's death and that Jelinek used over 6,000 bushels for seed from the wheat grown on this land. This occurred prior to Bengt Swanson's death and prior to the issuance of letters of administration. There is no evidence to support a finding that the failure to collect this claim was because the administrators did not use due diligence. The finding of the trial court is the one required by the record.

Bengt Swanson, during his life, had purchased about 2,100 acres of land from John O'Keefe and had executed a purchase money mortgage on this land for about $30,000. At the time of his death this debt was delinquent. O'Keefe wanted a payment of $10,000 and the interest. Swanson had sold on contract to Jelinek and others a large part of this land. O'Keefe did not file a claim against the estate for the amount due him. The administrators made the following payments on this account, without authorization of the county court.

| | | |
|---|---|---|
| November 19, 1929 | Interest | $ 100.00 |
| October 28, 1930 | Interest | 2,093.30 |
| October 28, 1930 | Principal | 5,000.00 |
| May 1, 1931 | Interest | 1,843.97 |
| May 1, 1931 | Principal | 2,500.00 |
| Total | | $11,537.27 |

These payments are the basis of the second objection to the final report by the heirs, which was sustained by the trial court. The administrators contend that the payments were made for the benefit of and in the best interests of the estate; that it was necessary to preserve the assets of the estate and to enable the estate to perform contracts of the deceased for the sale of portions of the mortgaged premises; and that the payments were made in the exercise of good faith, prudence, and diligence.

It is also contended that the payments were made with the approval and consent of the heirs. This contention may be dismissed from consideration at the outset, since the evidence is conclusive that such was not the fact. It is unnecessary, therefore, to note other objections to this defense.

Courts have sometimes held that an administrator may be given credit for payments made without an order of the probate court, made in good faith, to clear real estate of a mortgage lien. A recognized authority states the rule as follows: "Where the personal representative honestly and in the exercise of due prudence and diligence redeems mortgaged or otherwise encumbered property, the value of which is fairly in excess of the mortgage debt, he may be allowed credit for the outlay in his accounts, but outlays because of his own bad judgment or remissness of duty and without benefit to the estate are not thus favored." 24 C. J. 112. It seems unnecessary to announce here the law applicable, because under no theory advanced by the administrators would the evidence justify their actions in this case. A detailed discussion of the evidence applicable to this issue would extend this opinion beyond proper limits and serve no useful purpose to the bench or bar. It will be sufficient for all purposes to state our conclusions of fact.

At the time the payments were made the real estate was encumbered for much more than it was worth. They were not made in good faith and were not justified by the circumstances at the times of payment. The payments were

not necessary to enable the estate to perform contracts of the deceased, for, when the first payment was made, the vendees under the contract were in default—they were a year in default in October, 1930, and one and one-half years in default in May, 1931. The last two dates were when the substantial payments were made. Furthermore, the payments did not enable the estate to perform Swanson's contract, because no portion of the premises were released upon the payments. They did not preserve any of the real estate, because the mortgage debt was delinquent after the payments and subject to foreclosure, no extension was obtained, and it has since been foreclosed. The administration of this estate was not well managed. One of the administrators was an officer of a bank, and, as such, his duty to the bank and its customers was in constant conflict with his duty as administrator. We arrive at the conclusion that the judgment of the trial court was the correct one.

AFFIRMED.